**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DEWAYNE CHEWNING o/a/o MONICA CHEWNING,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:05-cv-301-Orl-31DAB**

**JO ANNE BARNHART,**

        **Defendant.**

_____

**MEMORANDUM OPINION & ORDER**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.     Procedural History**

Plaintiff[1] filed for a period of disability, DIB and SSI benefits on September 4, 2001. R. 50-52, 332-43. She alleged an onset of disability on July 17, 2001, due to residual stroke effects of

---

[1] Plaintiff passed away on November 15, 2004, and her husband, Dewayne Chewning, was listed as a substitute party on November 18, 2004. R. 354-56. For convenience, this opinion will refer to the decedent as if she were the Plaintiff.

numbness and tingling, seizure disorder-epilepsy, type II diabetes mellitus, headaches, weakness, and fatigue. R. 49, 55, 57, 64, 91, 366-70. Her application was denied initially and upon reconsideration. R. 33, 40. Plaintiff requested a hearing, which was held on November 19, 2003, before Administrative Law Judge Arthur W. Stacy (hereinafter referred to as "ALJ"). R. 357-78. In a decision dated February 20, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 17-24. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 10-13. The Appeals Council denied Plaintiff's request on December 22, 2004. R. 5-8. Plaintiff filed this action for judicial review on February 25, 2005. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of numbness and tingling from a stroke, seizure disorder-epilepsy, type II diabetes mellitus, headaches, weakness, and fatigue. R. 49, 55, 57, 64, 91, 366-70. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a seizure disorder, type II diabetes mellitus, hyperlipidemia, hypertension, GERD, and status post left carotid endaterectomy for carotid stenosis, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 18. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to lift no more than 20 pounds and lift and carry no more than 10 pounds on a regular basis; to do a good deal of walking and standing; and to perform some pushing and pulling. The ALJ found that Plaintiff had no limitations on sitting and no nonexertional limitations which further reduced her residual functional capacity, except that she must alternate sitting/standing positions when necessary. The ALJ also noted that even if the claimant were limited to sedentary work activities she would not be disabled under the Medical-Vocational guidelines. R. 22. In

making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not fully credible for the reasons set forth in the body of the decision.[2] R. 22. Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as a cashier as she had previously performed it. R. 23. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 23.

Plaintiff now asserts two points of error. First, she contends the ALJ erred by failing to determine whether Plaintiff's limitations (besides the lifting restriction) would impact her ability to perform her past relevant work as a cashier. Second, she claims the ALJ erred by improperly applying the pain standard and in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

---

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, Plaintiff's stated daily activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination. R. 22.

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

### A.  Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her subjective complaints regarding numbness, decreased grip strength and other limitations. She contends that the medical records demonstrates her credibility and that the ALJ ignored the records which show she received significant

-4-

treatment for her condition. The Commissioner contends that the objective medical and other evidence of record support the ALJ's finding that Plaintiff's conditions did not cause disabling pain and Plaintiff could perform a range of light work.

The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations, 20 C.F.R. §§ 404.1529, 416.929 and the requirement that he assess the medical evidence. R. 22. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective

-5-

medical condition that could give rise to the alleged symptoms and subjective complaints, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, immediately after discussing Plaintiff's RFC, the ALJ stated,

> While it is reasonable to conclude that the claimant should have some pain and or limitations, the evidence as a whole does not substantiate any cause for such debilitating pain, as described by the claimant that would preclude all work activity. The record fails to show that the claimant has required significant forms of treatment such as periods of hospitalization, or multiple emergency room treatment. The record also fails to show such a marked diminished range of motion, muscle atrophy, neurological or sensory deficits, or consistent use of an assistive device for ambulating, as would accompany the alleged disability. Furthermore, the claimant has testified that she is able to control her pain with Darvocet and Lortab, as needed for headache pain. There have been no adverse side effects, nor did the claimant display any side effects at the hearing. The claimant did testify that she did not have any side effects.
>
> As to activities of daily living, the claimant reported living with her husband and son. She indicated that she is able to cook, read and go shopping with her mother. She is able to take care of her personal needs such as feeding and dressing herself. The claimant retains the ability to leave home to shop, and to receive health care treatment. These activities of daily living not only negate the claimant's allegations concerning her functional limitations, but also negate the conclusion that the claimant has disabling pain. . . .
>
> [A]fter considering all the factors set out in that section of the regulations the undersigned finds that the claimant's subjective complaints are not fully credible considering the claimant's own description of her activities and life style, the degree of medical treatment required, discrepancies between the claimant's assertions and information contained in the documentary reports, the claimant's demeanor at the hearing, the reports of the treating and examining practitioners, the medical history, and the findings made on examination. Furthermore, no physician has placed any limitation on the claimant' activities.

R. 21-22.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.

*Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff contends that the ALJ failed to properly credit her subjective complaints. Plaintiff testified that she experienced disabling headaches, right side numbness residual from a stroke, seizures, and memory problems. R. 55, 64, 91, 366-70. Plaintiff challenges the ALJ's statement that Plaintiff has not required significant forms of treatment such as hospitalizations or multiple emergency room treatment and argues the ALJ completely ignored the fact that Plaintiff has had surgery that failed, she had undergone physical therapy, epidural injections, and was being treated by several physicians for her conditions.

The Court rejects Plaintiff's arguments for two reasons. First, there is no record citation for surgery that "failed," or physical therapy, or the epidural injections, and the Court finds no evidence whatsoever of physical therapy (outside of the hospital stay) or epidural injections. The only evidence of surgery on Plaintiff was a left carotid endarterectomy performed on September 5, 2001 to remove plaque from Plaintiff's artery, which was successful in reducing the 90% blockage. R. 112, 122-24.

Second, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between her reports and the examination findings. Plaintiff also contends that the ALJ erred in finding that Plaintiff has not had marked diminished range of motion or consistently used an assistive device. R. 21. She points to examinations which have shown decreased grip strength and other limitations, such as Dr. Cuncha's notes on March 20, 2003 that Plaintiff had a slight right facial weakness, questionable right arm drift, and slightly weak right hand grip, and a limp. R. 271-72.

-7-

The medical records do show that Plaintiff was admitted to Memorial Hospital in Ormond Beach on August 17, 2001 with a left cerebral vascular accident with right upper extremity weakness. R. 104-11. She had been to the Halifax Hospital Emergency Room the night before and when told she needed to be admitted, she signed out against medical advice. R. 104. She was also experiencing a toxic level of her seizure medication, Depakote. R. 104. The CT scan revealed no evidence of acute cerebral vascular accident, but an MRI of Plaintiff's brain showed a left parietal stroke. R. 104. Plaintiff was seen by Physical Therapy and Occupational Therapy and she started to reveal improvement remarkably in the right upper extremity before her discharge. R. 104. Plaintiff also had poorly controlled insulin dependent diabetes and a seizure disorder. R. 104.

Shortly after the stroke incident, a carotid ultrasound found that Plaintiff's left carotid artery was 90% blocked. R. 124. On September 5, 2001, Dr. William Johnson performed a left carotid endarterectomy with primary closure to remove plaque from Plaintiff's artery. R. 112. On September 20, 2001, Dr. Johnson reported that Plaintiff was doing well and discharged her from his care. R. 122.

Dr. John Parnell treated Plaintiff from August 23, 2001, through October 22, 2001, for headaches, nausea, and blurred vision. R. 140-43. Dr. Parnell found Plaintiff with a normal exam and diagnosed tension headaches, prescribed medications, and referred her to a neurologist. R. 140.

On January 8, 2002, Dr. Jack Pulwers performed a consultative examination of Plaintiff. R. 144-47. Plaintiff reported right side hemiparesis and right facial and upper extremity paresthesias. R. 144. She also had slurred speech, but this largely improved. R. 144. Plaintiff denied having pain anywhere. R. 144. The doctor noted that she had trouble walking due to numbness and cannot sit for more than five to ten minutes and cannot stand for more than five to ten minutes due to weakness in her right side. R. 144. He also noted that she suffers from nephrogenic diabetes insipidus, but she has been off medications for several years. R. 144. Dr. Pulwers also noted that Plaintiff's blood sugar

were out of control and average around 150 (which was on the low side compared to Dr. Patel's records). R. 144. She was also a smoker for 23 years. R. 145. The physical examination revealed full range of motion of all upper extremity joints including the wrists, elbows and shoulders; with grip strength on the right 4/5 and on the left 5/5. R. 146. Fine manipulation was within normal limits grossly, but Plaintiff had difficulty buttoning the button on a jacket and writing her name. R. 146. She had a limp on the right leg. R. 146. Dr. Pulwers diagnosed Plaintiff with a stroke with right hemiparesis and paresthesias and adult onset diabetes, but listed no limitations for Plaintiff. R. 147.

At a second consultative examination of Plaintiff on June 4, 2002, Dr. Thiruchelvam noted that Plaintiff had been taking medication for three years to control her seizures. R. 197. Plaintiff also reported having headaches six times per week. R. 197. The physical exam of Plaintiff revealed minimal right-sided weakness of about 4 out of 5 in the upper and lower extremities, with decreased hand strength to about 3 out of 5 with decreased fine manipulations. R. 199. She reported difficulty opening jars, but opened the lid of a bottle with some difficulty. R. 199. Plaintiff also reported decreased sensation on the right side upper extremity up to the shoulder, slow gait with a limp on the right side, and minimal right sided cranial weakness. R. 199. She could not hold her eyes tightly closed on the right side and there was minimal drooping on the right side of her mouth. R. 199. Dr. Thiruchelvam also reported that Plaintiff displayed good peripheral pulses with no edema, inflammation, or swelling and listed no limitations. R. 199-200.

Dr. Bhawesh Patel, a family physician, treated Plaintiff from December 7, 2001 through October 6, 2003 for her diabetes, high blood pressure, and headaches. R. 167-96, 209-64, 285-331. Dr. Patel prescribed medications to control Plaintiff's seizures, headaches, diabetes, and cholesterol R. 167-96, 209-64, 285-331. Plaintiff continued to smoke despite Dr. Patel's repeated warnings at

every single appointment for two years that she needed to quit smoking, particularly given her other risk factors. *See, e.g.,* R. 213, 226, 228, 233, 257, 285.

Dr. Patel also advised Plaintiff repeatedly that her blood sugar levels were too high or out of control and she had to get her them under control. R. 167, 172, 213, 240, 253, 256, 290, 294, 297. He advised her in April 2003 that she needed to keep her blood sugars at the 120s or so and she needed "tight control of her diabetes if she is to stop the transient ischemic attack symptoms from recurring." R. 215. Plaintiff was also told by the ophthalmologist that she needed to have stricter diabetic control to avoid vision problems. R. 216. Dr. Patel described Plaintiff in June 2003 as an uncontrolled diabetic. R. 301. Plaintiff's blood sugar levels sometimes ranged from 400 to 500, and even with medication, were only down to the 200s at times. *See, e.g.,* R. 213, 253, 291, 294, 297. Plaintiff continued to require diet control of her diabetes and was told to decrease her fatty diet. R. 213, 248. Plaintiff's death certificate lists "complications of diabetes mellitus - type 2" as the cause of death. R. 355.

On March 18, 2003, Plaintiff was admitted to Halifax Medical Center with right side face and arm numbness. R. 268-70. Dr. Ginny Kwong found that Plaintiff's Depakote levels were subtherapeutic and believed this was due to her noncompliance. R. 270. Dr. Olimpio Cunha assessed Plaintiff with a small ischemic cerebrovascular event and noted her right hemiparesis seemed to be much improved on March 20, 2003, although she still had a slight right facial weakness and questionable right arm drift. R. 272. Her right hand grip was also slightly weak. R. 271. Test results of Plaintiff's brain were normal. R. 277-81. All imaging was negative for a stroke, including an MRI of the brain as well as a MRA of the circle of Willis, plus carotid ultrasound bilaterally, as well as a CT of the head. R. 225, 309. There was no current or prior infarct seen on CT of the head or on MRI of the brain. R. 225. Dr. Patel then reviewed several years of records, finding them all to be normal,

and remarked, "These obviously leads to the question, [whether] the stroke is a true diagnosis in this patient." R. 225 ("presently I now question the diagnosis of stroke").

Plaintiff was seizure free for two years and was able to discontinue the Depakote medication as of August 2003. R. 209-10, 294. She was restarted on it in October 6, 2003, when her headaches and visual-type changes were reportedly similar to Plaintiff's pre-seizure aura symptoms. R. 287. Here, the ALJ found that Plaintiff's impairments did not cause the debilitating pain alleged that would preclude all work activity. As the ALJ noted, Plaintiff did not display muscle atrophy, neurological deficits, or use an assistive device to ambulate. R. 21. Plaintiff also reported that her pain on February 28, 2003 was reduced with the Lortab to a 4.5 out of 10. R. 230-31.

In May 2003, Dr. Patel noted that the headaches were multi-focal in origin and Plaintiff was presently able to control them by controlling her blood sugar. R. 308. Dr. Patel told Plaintiff "this [wa]s an important piece of information and [he] told the patient she does need to watch her blood sugars much more closely." R. 308. Plaintiff also testified that she did not experience side effects from her medications. R. 372-73. Plaintiff denied experiencing any pain when she was examined by Dr. Pulwers in January 2002. R. 144. On April 22, 2003, Plaintiff reported to Dr. Patel that her headaches lessened after she purchased a pair of eyeglasses; she was diagnosed with astigmatism, presbyopia as well as myopia. R. 209.

Plaintiff's complaints of numbness that would allegedly preclude her from sitting or standing for more than ten minutes are discredited by evidence in the medical records of her reports to Dr. Patel on several occasions in 2003 that she was walking and/or riding her bike regularly as exercise in order to lose weight. R. 287 (October), 298 (July), 306 (June), 307 (May). In April 2003, Dr. Patel noted Plaintiff's limp on the right side but reported that "the staff had noted the patient to have a normal gait prior to entry into the room." R. 214. In June 2003, Plaintiff saw Dr. Patel after injuring her hand

-11-

playing football. R. 301. In September 2003, Dr. Patel noted that Plaintiff moved all extremities "extremely well." R. 290. On October 6, 2003, Plaintiff told Dr. Patel that she was walking every day for exercise. R. 287.

The ALJ also discredited Plaintiff's subjective complaints based on inconsistencies between her statements and her activities of daily living which undermined her subjective complaints of disabling pain. Plaintiff contends that her activities of daily living do not negate her allegations of disabling pain because participation in everyday activities of short duration does not disqualify a claimant from disability. She contends that housework, light cooking, and light grocery shopping are minimal daily activities do not demonstrate that she can perform sedentary work. Plaintiff participated in a good number of daily activities, including cooking, shopping, watching television, and getting her son ready for school. R. 371, 374-75. Moreover, she regularly exercised, either walking or biking, in order to lose weight. R. 287, 298, 306, 307. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The Court finds that the ALJ's reasons are supported by substantial evidence.

### B.     Residual Functional Capacity

Plaintiff claims that the ALJ should not have found her able to perform light work in light of all of her limitations from her impairments, including her headaches and the need to alternate between sitting and standing. The Commissioner contends that the ALJ properly found Plaintiff could perform her past relevant work as a cashier based on Plaintiff's RFC and the demands of her prior work as generally performed and described by her.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of

the claimant's condition and the medical consequences thereof. *Id.* Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis*, 125 F.3d at 1440; 20 C.F.R. §§ 404.1527(d), 416.927(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

Plaintiff contends that the ALJ erred in determining that Plaintiff's limitations would not preclude her ability to perform her past relevant work as a cashier. Plaintiff points to her testimony that she suffers from headaches three to four days of the week. R. 372. She described the headaches as massive pain, starting in the back of the head behind the ear and going up to the top, a feeling like someone is grabbing and squeezing. R. 373. Plaintiff also testified that she could sit without shifting for only about five to ten minutes and she could only stand in one spot about five to ten minutes without moving. R. 373. In her Work History Report, Plaintiff described her job as requiring substantially more standing and walking than sitting. R. 79-81.

Although the ALJ noted in the decision that Plaintiff had to alternate between sitting and standing when necessary, Plaintiff argues that the ALJ erred in finding Plaintiff capable of light work and by finding that she was capable of doing her past relevant work as a cashier. Plaintiff contends that the Social Security regulations provide that an individual who is able to sit for a time, but must then get up and stand or walk a while before returning to sitting, is not functionally capable of doing

-13-

either the prolonged sitting contemplated in for sedentary work or the prolonged standing or walking contemplated for most light jobs, citing Ruling 83-12.  In cases where a claimant cannot sit or stand indefinitely, "a vocational expert, vocational dictionary or other appropriate guide or source must be consulted to determine whether there are sufficient jobs in the national economy that the applicant is physically capable of holding to justify a conclusion that he is not disabled." *Id.*

Plaintiff also contends that the limitations assigned by the ALJ on Plaintiff's ability to perform pushing and pulling would prevent her from being able to perform her job as a cashier, since she testified at the hearing and through her Work History Report that pushing and pulling was required to perform the cashier job.  R. 79-81, 363.  Plaintiff also contends that the medical evidence and her testimony support her complaints of left side weakness and numbness, which would preclude her from grabbing and pinching items or being able to perform the cashier job.

The Commissioner contends that, based on the medical evidence, the ALJ properly found that Plaintiff retained the ability to perform a range of light work, specifically finding that Plaintiff could lift and carry no more than twenty pounds, do a good deal of walking and standing, some pushing and pulling, with no limitations on sitting. R. 22-23, Finding 7.  The ALJ also found Plaintiff had no nonexertional limitations, that Plaintiff should alternate sitting and standing when necessary, and determined that Plaintiff's past relevant work as a cashier did not require the performance of work-related activities precluded by this RFC.  R. 22-23.  Neither of the two examining physicians set any restrictions on Plaintiff's ability to work.  R. 144-47, 197-200.  State agency physicians who reviewed the evidence opined that Plaintiff was capable of light work, with certain restrictions incorporated by the ALJ.  R. 152, 202.

The Commissioner contends that, contrary to Plaintiff's argument, the ALJ was not required to obtain vocational expert testimony when considering whether Plaintiff could perform her past

relevant work. The Court agrees that where the ALJ concludes that Plaintiff can perform her past relevant work, it is not necessary to call a vocational expert. *Lucas v. Sullivan*, 918 F.2d 1567, 1573 n.2 (11th Cir. 1990) ("because the ALJ concluded that [the claimant] is capable of performing her past relevant work, testimony from a vocational expert was not necessary"); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987) (testimony of a vocational expert is only required to determine whether the claimant's residual functional capacity permits him to do other work after the claimant has met his initial burden of showing that he cannot do past work). Plaintiff's description of her past relevant work indicates that she could perform her former work as a cashier given her RFC for a range of light work. Substantial evidence supports the ALJ's conclusion that Plaintiff could perform her past relevant work and, therefore, was not disabled.

### *IV. CONCLUSION*

The record in this case shows that Plaintiff did not enjoy full health. The ALJ appropriately considered her circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on March 7, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record